SIGMA DELTA TAU SOCIETY, Plaintiff-Appellant, *v.* PAUL L. ALONGI, Defendant-Appellee.

Second District (1st Division)    No. 75-479

Opinion filed December 28, 1976.

Robert G. Coplan, of Connolly, Oliver, Goddard, Coplan & Close, of Rockford, for appellant.

Philip H. Nye, Jr., and Kim D. Krahenbuhl, both of Fearer & Nye, of Rochelle, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

In the year 1968 Sigma Delta Tau Society, a Delaware corporation, entered into a lease for the rental of premises in DeKalb, Illinois, at Northern Illinois University with Ropa, Inc., an Illinois corporation. In 1969 Ropa, Inc.'s interest in the premises as lessor was assigned to the First National Bank of DeKalb as trustee under the provisions of a trust agreement and in 1971 was reassigned to the defendant, Paul L. Alongi, and his wife.

The sorority apparently ran into financial difficulty and, after negotiations between the attorneys for Alongi and attorneys for the sorority, a "Mutual Agreement to Terminate Lease and Release" was executed by the parties. This mutual agreement provided that the sorority would pay the sum of $14,000 for the rental payment due on October 1,

1973. Alongi, as lessor, agreed that if he were able to secure a tenant for the one-year period beginning June 3, 1973, that he would reimburse the sorority

"* * * in an amount equal to the difference between the aggregate amount of rental monies received and/or to be received by Lessors and the sum of $28,000.00 (but said refund not to exceed $14,000.00.) It is the intent of both parties that the Lessors are to receive rental income of $28,000.00 for the one (1) year period commencing June 3, 1973 from all sources including the $14,000.00 paid by Lessee upon the execution of this agreement before any refund is made to Lessee."

The mutual agreement further provided that:

"3. Lessee shall pay at time of receipt of the 1972 Real Estate Tax bill by Lessors an amount equal to one and one-half (1½) times the increase in taxes over the base year as called for in the lease to compensate Lessors for all of 1972 increase and one-half of 1973 increase."

In consideration of the mutual agreement, the lease was terminated and cancelled and the parties thereto released each other from any further obligation under the lease.

Alongi, the lessor, subsequently rented the premises in question to a group of international students and during the school year collected the sum of $32,873, including the $14,000 paid to him by the sorority. Inasmuch as the rental collected exceeded the sum of $28,000 pursuant to the terms of the mutual agreement, the sorority thereupon filed suit for the excess collected over $28,000, being $4,873. The lessor defendant answered the complaint and filed an affirmative defense stating:

"That the term 'aggregate amount of rental monies received and/or to be received by lessors' was, in fact, intended by the parties to mean rental monies received less utilities, maintenance and managerial expenses advanced by the Defendant on behalf of the renters; it being the intention of the parties to give Defendant $28,000.00 net, as provided in Lease of May 14, 1968, and Mutual Agreement of April 27, 1973."

It would appear to be the defendant's contention that he had advanced the sum of $7,796.30 for the items which he claims, leaving an alleged net rent to him, pursuant to his statement, of $25,076.70. Defendant further filed a counterclaim for the increase of the tax bill incurred by him pursuant to the terms of the mutual agreement in the sum of $1,577.10.

The trial court found for the defendant on the complaint herein and against the counterplaintiff on his claim for taxes, stating as a reason therefore, "It appears that the law in Illinois is that in the event the court cannot determine the intentions of the parties in a suit to construe an

instrument that the court should leave the parties in a position in which it finds them. That is what I am going to do," and that is what he did.

The sorority has appealed but the defendant has not cross-appealed from the judgment of the court denying his claim for taxes paid. The latter, therefore, is not an issue before this court. Ill. Rev. Stat. 1975, ch. 110A, par. 301.

The sole issue presented in this case is the interpretation of the mutual agreement. Plaintiff contends that it is to receive that amount of rent collected by the lessor in excess of the sum of $28,000, pursuant to the specific provisions of the mutual agreement to terminate the lease and release the parties of their obligations under the lease. Defendant, on the other hand, contends that the word "rent" was intended to mean the net amount received by him after deducting "utilities, maintenance and managerial expenses advanced by defendant on behalf of renters."

■■ The question, therefore, succinctly stated, is whether there is an ambiguity in this mutual agreement or, as the plaintiff indirectly states, whether this court is being asked to in effect make a new agreement for the parties thereto. It is patent that a court does not have the power to make a new agreement for the parties or by construction to write a new agreement into which the parties have not entered. (*Knockaert v. Studebaker Corp.* (1967), 84 Ill. App. 2d 16, 228 N.E.2d 101 (abstract opinion).) Likewise, where the terms of the agreement are plain and unambiguous, the instrument itself is the only source of the intention of the parties. (*Decatur Lumber Co. v. Crail* (1932), 350 Ill. 319, 183 N.E. 228; see also *Freeland v. Edwards* (1957), 11 Ill. 2d 395, 142 N.E.2d 701.) All provisions of an agreement such as words, phrases and clauses, are presumed to have been inserted deliberately and for a purpose. (*Industrial Commodity Corp. v. E. J. Brach & Sons* (1968), 92 Ill. App. 2d 163, 235 N.E.2d 857.) The record herein does not indicate who in fact prepared the mutual agreement but it does appear that the same was prepared through the efforts of attorneys for both of the parties. Further, the construction given an agreement by a trial court judge will not be set aside unless contrary to the manifest weight of the evidence. (*Spitz v. Brickhouse* (1954), 3 Ill. App. 2d 536, 123 N.E.2d 117.) We find herein, however, that the construction given by the trial court as to the mutual agreement in question is contrary to the manifest weight of the evidence.

■■ In *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886, 888, the court stated:

> "The primary object in construing a contract is to give effect to the intention of the parties involved."

In *Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 543, 165 N.E. 286,

290, the court, in criticizing the defendant's argument for construing a real estate contract therein stated:

> "Defendants merely seek to avoid any obligation by giving the contract a technical interpretation, contrary to the basic tenets of construction, and contrary to the obvious understanding of the parties."

Similarly, the defendant herein argues in favor of a technical and unusual construction of the word "rent" to mean "net rent." We do not find the word "rent" to be an ambiguous term. The parties hereto were represented by counsel and it is to be presumed that the lawyers in preparing this mutual agreement used the term rent in its ordinary meaning. To construe the word "rent" to mean "net rent" would in effect be rewriting the mutual agreement for the benefit of the defendant. We find nothing in the mutual agreement that would indicate that it was the intention of the parties, as contended by the defendant, that the word "rent" was intended to mean rental monies received less utilities, maintenance and managerial expenses advanced. None of these terms appear in the mutual agreement.

The order of the trial court that plaintiff recover nothing from the defendant is reversed and the cause is remanded with directions to the trial court to enter judgment for the plaintiff in the sum of $4,873.

Reversed and remanded with directions.

SEIDENFELD, J., concurs.