THE COUNTY OF WILL, Plaintiff-Appellee, *v.* LOCAL 1028, WILL COUNTY EMPLOYEES UNION, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Defendant-Appellant.— (AMERICAN ARBITRATION ASSOCIATION, Defendant.)

Third District No. 78-41

Opinion filed January 10, 1979.—Rehearing denied February 13, 1979.

Jacob Pomeranz, of Cornfield and Feldman, of Chicago, for appellant.

Edward Petka, State's Attorney, of Joliet (Jose M. Nunes, Assistant State's Attorney, of counsel), for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This appeal is from the judgment of the circuit court of Will County granting the motion for summary judgment of plaintiff-appellee, County

of Will, and denying the motion for summary judgment of defendant-appellant, Local 1028, Will County Employees Union.

In April 1975, Gloria Hunter was discharged as an employee of plaintiff, County of Will. A grievance proceeding was brought by the union on defendant's behalf and it culminated in an arbitration hearing and decision in favor of the Union and Gloria Hunter. The County of Will brought an action in the circuit court of Will County to vacate the decision of the arbitrator. The union moved to dismiss the county's petition and to enter an order enforcing the decision of the arbitrator. Defendant's motion was denied and the county and the union filed cross motions for summary judgment. The union appeals from the denial of its motion for summary judgment and the granting of the county's motion for summary judgment.

The grievance was not resolved during the early stages of the grievance procedure. On May 25, 1975, the union notified the county it desired to take Gloria Hunter's case to arbitration. On June 5, 1975, the county acknowledged the union's action and indicated its willingness to proceed. The union appointed as its arbitrator its president, Deputy Sheriff Garrett McGuire and the county appointed as its arbitrator a member of the county board, William Starner. After a considerable period of negotiation these two nominated Eugene Garrison as the third arbitrator. Garrison was notified he should submit dates to the parties and he was given the agreed to wording of the issue and some ground rules for the conduct of the hearing including the necessity for the presence of a court reporter. Conflicts arose between the parties as to the proposed dates for the hearing. Garrison stated he would only hold hearings without a court reporter and if this condition was not acceptable to either party another arbitrator should be chosen. On March 9, 1976, Garrison wrote McGuire and Starner regarding both the date and the method of the hearing. He stated if either condition was not satisfactory to both parties another arbitrator should be contacted. On March 13, 1976, McGuire wrote Starner that the conditions set forth by the local arbitrator were totally unacceptable to the union and therefore the union was no longer in need of Garrison as an arbitrator and would be contacting the American Arbitration Association for its help. On March 17, 1976, Bettye Brown, tribunal administrator of the American Arbitration Association, wrote McGuire and Ted Grabavoy, chairman of the Will County Board, that the American Arbitration Association was in receipt of McGuire's letter requesting the Association submit a list of names so that one could be chosen to hear the dispute. On March 29, 1976, Starner wrote McGuire that inasmuch as the union saw fit to withdraw the case from the agreed-upon arbitrator, the county considered the case closed. On May 3, 1976, Grabavoy wrote Bettye Brown and stated that as stated in his letter of

April 7, 1976, the Will County Board had not agreed to place the matter with the American Arbitration Association for arbitration. On May 26, 1976, Grabavoy wrote Bettye Brown and stated that in reply to the May 20, 1976, notice that there would be a hearing on June 22, 1976, with Herbert Bermann serving as arbitrator, that the county did not recognize any agreement to arbitrate and that it would not honor any invoices from the Association.

Although numerous issues have been argued, the crucial issue is whether the appointment of Herbert Bermann as arbitrator was so improper as to render any decision rendered by him null and void. We answer the issue in the affirmative.

The crux of the county's argument with regard to the selection of Bermann as the third arbitrator is that the step of requesting an arbitrator from the American Arbitration Association was contrary to the provisions of the contract between the parties. The terms of the contract mandated the party-appointed arbitrators make an honest effort to find a local arbitrator and the county argues no such effort was made in the selection of Bermann. At no time did the union submit to the county-appointed arbitrator the name or names of the persons acceptable as third arbitrators. Rather than there being a failure to agree as contended by the union, the county argues there was no attempt to agree upon a third arbitrator after Garrison's rejection of the appointment. The county argues the union violated the contract by acting unilaterally in submitting the dispute to the American Arbitration Association.

The Union contends the significant question is whether the parties were unable to agree upon an impartial arbitrator within five working days after notice of intent to arbitrate. It argues such a disagreement existed and once the disagreement occurred the controlling contractual provision provided for the use of the American Arbitration Association. It counters the county's contention that the union violated the contract because it failed to attempt to obtain the appointment of a third arbitrator by the arbitrators previously selected with its argument the record shows that after 10 months of attempting to agree the neutral arbitrator in effect resigned.

■■ It is a well-settled policy that private resolution of disputes is favored. (*School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 215 N.E.2d 25.) The contract in question reads in pertinent part as follows:

> "* * * Each party shall appoint one arbitrator, and the arbitrators selected by the parties shall appoint an impartial arbitrator. If the Board—appointed arbitrator and the Union—appointed arbitrator are unable to agree upon an impartial arbitrator within five (5) working days after notice of intent to arbitrate is given, he shall be

selected in accordance with Rule 12 of the Voluntary Labor Arbitration Rules of the American Arbitration Association. The Board of Arbitration thus selected shall decide the merits of the grievance. * * *"

The Uniform Arbitration Act provides that when an appointed arbitrator fails or is unable to act, his successor shall be appointed in the same manner as the original appointee. Ill. Rev. Stat. 1975, ch. 10, par. 103.

■■ The original appointment of Garrison was made by agreement between the union and the county-appointed arbitrators. The appointment of Bermann was not made by this same procedure. Once the union rejected the condition set forth by Garrison it decided to unilaterally proceed and made no further attempts to agree upon a neutral arbitrator. As shown by the record, the county refused to proceed under those conditions. Examination of the contractual provisions and the applicable statute provide us with the conclusion that at this point the union violated the terms of the agreement to arbitrate. The county was no longer bound to proceed and accordingly, any decision rendered by the subsequent arbitrator, Bermann, is null and void.

For the foregoing reasons the judgment of the circuit court of Will County finding in favor of plaintiff-appellee and vacating the order of the arbitrator is affirmed.

Judgment affirmed.

STENGEL and SCOTT, JJ., concur.